## Peacock, Appellant, *v.* Philadelphia.

*Road law—Laying out of street—Railroad right of way—Ordinances—Laying of water and gas pipe—Vacation of street.*

1. Where a city lays out a street up to the line of the right of way of a railroad company, and another street on the opposite side up to the other line of the right of way, there is no absolute right in the public to use the intervening space as a highway, and the fact that the city has granted a permit to a gas company to lay gas pipes under such intervening space with the consent of the owner, or that the city has laid a water pipe under the space, is not in itself sufficient to establish a public highway across such intervening space.

2. In such a case the fact that the city by ordinance authorized the laying of the water pipe does not imply that this was to be done otherwise than in the exercise of the city's right to lay water pipe across intervening private property with the owner's consent, or upon giving or securing him compensation.

Argued Oct. 12, 1911. Appeal, No. 90, Oct. T., 1911, by plaintiff, from order of C. P. No. 3, Phila. Co., March Term, 1904, No. 4,650, refusing to take off nonsuit in case of Elizabeth Peacock v. Philadelphia. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Appeal from report of jury of view. Before DAVIS, J.

At the trial the court relying on Siddall v. Philadelphia, 225 Pa. 55, entered a judgment of nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*Wm. E. Caveny,* with him *Samuel H. Kirkpatrick* and *Bayard Henry,* for appellant.

*John G. Lamb,* with him *Wm. Gray Knowles,* assistant city solicitor, and *James Alcorn,* city solicitor, for appellee.

OPINION BY RICE, P. J., March 1, 1912:

This case came into the common pleas by appeal by plaintiff from the report of the jury of view appointed by

the quarter sessions to assess damages and benefits arising from the vacation (striking from the city plan) of that portion of Ruscomb street which lay between the east line of the Germantown and Chestnut Hill branch of the Philadelphia & Reading Railway and Twentieth street. The plaintiff's property does not abut on the part of the street vacated, but is situated at a point east of Twentieth street, to wit, at the southwest corner of Ruscomb street and Uber street. Her counsel concede that, under the decision in Siddall v. Phila., 225 Pa. 55, her case "depended upon her ability to prove a right to the use of a crossing over the lands of the railroad company, connecting the portions of Ruscomb street lying to the east and west of the railroad's lands." The decision referred to goes farther than this statement, taken strictly, would imply, and this is conceded in other portions of the learned counsel's argument. It is further shown by this extract from the opinion of Judge FERGUSON, which was adopted by the Supreme Court: "The trial judge, in his instructions to the jury, pointed out to them that as a matter of law there could be no claim for damages against the city by reason of this change in the plan so far as it affected the properties west of the railroad, unless they could find from the evidence that the connecting link across the railroad was established as a public use, for if the public had no legal right to cross the right of way of the railroad at the point involved, it would follow that any damage which the property owners west of the railroad suffered by reason of the striking of the street from the plan would not be different from that of the public at large." Without going into a prolix recital of details, it is sufficient to say that, for the same reason, the plaintiff could not recover damages by proof of a permissive crossing used by the public generally, or even a private right of crossing in her; but that it was incumbent on her to prove that there was a public highway at that point connecting the two portions of Ruscomb street which, as plotted on the city plan, ended at the east and west lines, respectively, of the railroad company's right of way. It is thus seen that the

controlling question in the case, namely, as to the existence
of such public highway, is the same question that was de-
termined adversely to the plaintiff in the case cited.   Of
course, the parties being different, the matter is not res
judicata, but we are so far bound by the decision as a
precedent that the facts which in that case were held in-
sufficient in law to establish a public highway at the point
in question, must be so held in the present case, even
though the evidence adduced to prove these facts is fuller
than that given on the trial of the case cited.   The question
then arises, whether evidence was given of additional
facts which, taken in connection with the facts under con-
sideration in the case cited, ought to or could produce a
different result.   It is claimed that evidence was given of
two such additional facts.   First, our attention is called to
two ordinances of councils, one approved in 1875 and the
other in 1887.   The former authorized the chief engineer
of the water department to lay water pipes on certain
streets, and, amongst them, "on Ruscomb street from
East Logan street to Germantown railroad;" and the lat-
ter authorized him to lay water pipes on "Ruscomb street
from the present terminus west of railroad eastwardly to
19th street."   It was also shown, by the report of the pur-
veyor of the district, which was admitted without objec-
tion, that water pipe was laid from a point west of the rail-
road right of way eastwardly to Uber street.   The other
additional fact called to our attention is, that in 1899 the
board of highway supervisors issued a permit to United
Gas Improvement Company to lay gas mains in certain
specified streets, and, amongst them, in Ruscomb street
from East Logan to Uber.   But this permit contained the
proviso, that on streets not dedicated the consent of the
owner or owners should be obtained.   And the evidence
shows that the gas company informed the railroad com-
pany of the crossing it desired to make under the tracks of
the railroad at Ruscomb street, and requested the railroad
company to notify "our Mr. Spangler when the work can
be done."   The evidence fails to show that the city offi-

cials who issued the permit attempted or claimed the right to permit the gas company to lay a gas main under the right of way of the railroad company without its consent. The fair interpretation of the permit and the action under it is, that these city officials intended that the right, so far as it was to be exercised without the consent of the owner or owners of property, was to be exercised only in dedicated streets. It is impossible to see, therefore, how the evidence could in any way tend to show that the locus in controversy in the present case was part of a dedicated street. As to the laying of water pipes, we remark that the first ordinance above referred to did not expressly authorize that to be done under the right of way. But the second ordinance did; that is, it authorized the laying of pipe from a point in the portion of Ruscomb street west of the railroad to a point in the portion of the street east of the railroad, thus necessarily implying that it was to be carried under the right of way of the railroad company. But it does not imply that this was to be done otherwise than in the exercise of the city's right to cross intervening private property with the owner's consent or upon giving or securing him compensation. Nor is there any evidence that it was done without the consent of the railroad company. The effect of these facts, it is argued by counsel, is to show that the city adopted the crossing as a part of a continuous street. We cannot agree to this, either as a legal conclusion to be declared by the court or as a conclusion of fact to be drawn by the jury. The action of councils and that of the city officials are entirely consistent with the undisputed fact that this intervening land never was plotted on the city plan as part of Ruscomb street or laid out by the proper corporate officers, and with the conclusion flowing from that and the other facts in the case, that this crossing was not a public highway connecting the two portions of the street. Judge FERGUSON said, in his opinion, relative to the establishment of a way by prescription: "There must be a user without consent, or municipal action looking toward the establishment of a public

way. There was no evidence of any municipal action with this end in view." Notwithstanding the able argument of appellant's counsel upon this point, we think it is as true in this case as it was in the case cited, that there is no evidence of any municipal action from which it can be concluded, either as matter of fact or of law, that this was adopted or accepted as a public street, or that the railroad company intended to dedicate it to public use.

Stress is laid on the provisions of sec. 16 of the Act of February 17, 1831, P. L. 53, incorporating the Philadelphia, Germantown & Norristown Railroad, that the company shall not "obstruct or impede the free use and passage of any public road or roads which may cross or enter at the same, being now laid out or hereafter to be laid out; and in all places where the said railroad may cross, or in any way interfere with any public road, it shall be the duty of the said company to make or cause to be made, a good and sufficient causeway or causeways, to enable all persons passing," etc. It is argued that, under these provisions of its charter, the company took its right of way subject to the right of the public to lay out streets over any portion of the same, and that, where the city opens its streets to either side of the right of way, the public is entitled to the use of a crossing and the railroad is bound to provide means to cross. Carrying the argument to its logical conclusion, it would amount to this, that, if the city lays out a street up to the line of the railroad, and another street on the opposite side up to the other line of the railroad, the absolute right of the public to use the intervening space as a highway is established; or, to adopt the language of counsel, "that so far as the railroad was concerned Ruscomb street was completely opened as a continuous street when the municipality brought the street to either line of the right of way." No authority is cited which sustains this broad proposition, and we think it is not deducible from the words of the statute. While it does not appear to have been particularly discussed in the Siddall case, it was inferentially negatived by the decision.

Upon a review of the entire case, we see no substantial ground for distinguishing it from the case of Siddall v. Philadelphia.

The judgment is affirmed.